

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORRIS MCALLISTER,

Plaintiff,

- against -

TEAMSTERS LOCAL 917,
QUICK PARK,

Defendants.

**OPINION & ORDER**

**13-CV-5772 (RLE)**
**13-CV-6618 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

Morris McAllister commenced two separate actions against Teamsters Local 917 ("Local 917") (13-CV-5772) and Quick Park (13-CV-6618), in August of 2013. In April 2014, the Parties in both cases consented to proceed before the undersigned pursuant to 18 U.S.C. § 636(c). McAllister alleges that Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e - 2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290-297, by terminating him because of his race and his age. (13-CV-5772, Doc. No. 5; 13-CV-6618, Doc. No. 5)

On December 5, 2014, Defendants filed separate Motions for Summary Judgment. (13-CV-5772, Doc. No. 30; 13-CV-6618, Doc. No. 30) On January 6, 2015, McAllister filed a letter with the Court stating that he was "not satisfied" with the Defendants' motions, re-raising previously addressed discovery issues, and asking that the case be "dismissed and/or moved to trial." (13-CV-5772, Doc. No. 36; 13-CV-6618, Doc. No. 38) This letter was not responsive to Defendants' motions. As McAllister is a *pro se* litigant, the Court allowed him to submit a supplemental response to Local 917's and Quick Park's Motions for Summary Judgment by

March 4, 2014. (13-CV-5772, Doc. No. 40; 13-CV-6618, Doc. No. 43) McAllister did not file opposition papers.

For the reasons set forth below, Defendants' Motions for Summary Judgment are **GRANTED**.

## II. BACKGROUND

In or around 2005, McAllister was hired as a Porter by Imperial Parking (US), LLC ("Imperial"). (13-CV-6618, Doc. No. 31, Ex. A) On September 1, 2012, Imperial Parking's management contract expired and Quick Park was retained to manage Imperial's parking garages. (13-CV-6618, Doc. No. 32 at 1.) When Quick Park was retained it initially hired all of the employees that were previously employed by Imperial, including porters like McAllister who were responsible for cleaning the garages. (*Id.*) Quick Park eventually determined that the porter position was unnecessary and decided to require its parking attendants to clean the garages when they were not parking cars instead of employing porters. (*Id.*) As a result, on October 7, 2015, Quick Park laid off its only two porters: McAllister and another individual named Oscar Guerrero. (*Id*; Doc. No. 32, Ex. A)

On October 8, 2012, McAllister contacted his union, Local 917, and informed them of the layoffs. (13-CV-5772, Doc. No. 31, Ex. 1 at 2) The secretary-treasurer of Local 917, David Perez, told McAllister he would investigate the layoffs and get back to him. (*Id.*) Perez contacted Lincoln Llopiz, Quick Park's Vice President of Operations, and found out that the porter position had been eliminated because Quick Park did not have the porter classification at any of its garages. Perez and Llopiz came to the agreement that Local 917 would consent to Quick Park using parking attendants to clean the garages as they did at other locations, but that if Quick Park changed its practice and hired porters in the future, the porters would have to be included in the

bargaining unit. (*Id.*) On October 18, 2012, Perez called McAllister and informed him that Quick Park had eliminated the porter position. (*Id.*)

**A. NLRB Charges**

On November 19, 2012, McAllister filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that Local 917 had unlawfully refused to process his grievance against Quick Park in violation of the National Labor Relations Act ("NLRA"). (13-CV-5772, Doc. No. 31, Ex. 4) On February 28, 2013, the NLRB dismissed the charge because the "evidence fail[ed] to establish that the Union violated the Act as alleged or in any other manner encompassed by the charge." (13-CV-5772, Doc. No. 31, Ex. 5)

On April 8, 2013, McAllister filed a second charge with the NLRB alleging that Local 917 had "failed and refused to represent [McAllister] in his grievance concerning his layoff by Quick Park and reassignment of his job responsibilities to three other employees, for arbitrary, discriminatory and capricious reasons." (13-CV-5772, Doc. No. 31, Ex. 7) On June 27, 2013, the NLRB dismissed the charge because the "evidence fail[ed] to establish that the Union violated the Act." (13-CV-5772, Doc. No. 31, Ex. 8) The NLRB further stated that "the Union agreed that, pursuant to the terms of the collective-bargaining agreement, the Employer could eliminate [the porter] position and transfer the work" and that Local 917 had "attempted to but was unsuccessful in obtaining another position for [McAllister] at that location." (*Id.*)

**B. NYDHR Charges**

On March 5, 3013, McAllister filed a Verified Complaint with the New York State Division of Human Rights ("NYDHR") against Quick Park alleging that: 1) Quick Park terminated his employment in violation of NYHRL and Title VII because he had "opposed discrimination,;" 2) "others with less seniority" should have been laid off before him; and 3) the

employees who were not terminated had been promoted to his former position. (13-CV-6618, Doc. No. 31, Ex. A.) That same day, McAllister filed a Verified Complaint with NYDHR against Local 917 alleging that the union had retaliated against him for opposing discrimination and had "failed to give [him] an arbitration hearing, failed to give [him] a lay off notice, or do anything for [him]" in violation of NYHRL and Title VII (13-CV-5772, Doc. No. 31, Ex. 9)

On April 11, 2013, McAllister filed an Amended Complaint against Quick Park alleging that he was terminated because he had opposed discrimination and because of his age (fifty-two), and that "three younger employees" (all in their forties) were doing his job. (13-CV-6618, Doc. No. 31, Ex. A.) He claimed violations of NYHRL and Title VII. (*Id.*) That same day, McAllister filed an Amended Complaint against Local 917 alleging that the union had retaliated against him for opposing discrimination and had failed to represent him because of his race in violation of Title VII and NYHRL. (13-CV-5772, Doc. No. 31, Ex. 10)

After conducting an investigation, the NYDHR dismissed McAllister's Amended Complaint against Quick Park on June 28, 2013. (13-CV-6618, Doc. No. 31, Ex. 4) The investigation revealed that all three of the "younger" employees McAllister referenced in his complaint were in fact older than McAllister. (*Id.*) The investigator interviewed the parking attendant who had replaced McAllister and confirmed that the porter position had been eliminated and that the parking attendant was in fact older than Mr. McAllister. (*Id.*) The investigator found that McAllister "did not oppose discrimination; he opposed the fact that less senior union members were retained over him. Therefore, [McAllister] did not engage in protected activity prior to his separation from [Quick Park]." (*Id.* at 2.) The NYDHR concluded that "the investigation did not reveal sufficient evidence to establish and inference of discrimination based on age or retaliation." (*Id.*)

That same day, the NYDHR dismissed McAllister's Amended Complaint against Local 917. (13-CV-5772, Doc. No. 31, Ex. 11) The division's investigation revealed that a current sixty-one year old current employee of Quick Park and union member had been previously terminated, but was able to get rehired with help from Local 917. (*Id.*) The investigation further revealed that McAllister did not complain to Local 917 until after he was terminated and thus, he had not engaged in any protected activity prior to his termination. (*Id.*) The NYDHR concluded that "the investigation did not reveal sufficient evidence to establish an inference of discrimination based on Age and Retaliation." (*Id.*)

**C. EEOC Charges**

On March 5, 2013, simultaneous with his NYDHR filings, McAllister filed Charges of Employment Discrimination under Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Commission ("EEOC") against both Local 917 and Quick Park. (13-CV-6618, Doc. No. 31, Ex. B) These charges relied upon the allegations listed in McAllister's NYDHR Complaints. (*Id.*) After the NYDHR dismissed McAllister's complain13-CV-5772, the EEOC adopted the NYDHR's findings and dismissed his claims as well. (*Id.*, Ex. D-E)

**C. Southern District Actions**

McAllister commenced an action against Local 917 on August 26, 2013, and filed an Amended Complaint ("Amended Complaint (TS)") on October 30, 2013. (13-CV-5772, Doc. Nos. 1, 5) In his Amended Complaint (TS), McAllister alleges that Quick Park violated Title VII and NYHRL by terminating him because of his race (black) and age (fifty-two). (*Id.*) He commenced an action against Quick Park on September 17, 2013, and filed an Amended Complaint ("Amended Complaint (QP)") on December 2, 2013. (13-CV-6618, Doc. Nos. 2, 5) In his Amended Complaint (QP), McAllister alleges that Local 917 violated Title VII and the

ADEA by retaliating against him and failing to promote him because of his race and age. (*Id.*)

## III. DISCUSSION

### A. Applicable Law

#### 1. Summary Judgment Motions

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant makes a properly supported motion, the nonmoving party must set forth specific facts showing that there is genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "In considering the motion, a court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986).

#### 2. Pro Se Litigants

When a *pro se* litigant is opposing summary judgment, the Court must read the litigant's papers liberally and "interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) "Although pro se plaintiffs are entitled to special latitude when defending against summary judgment motions, absent a showing of concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor, summary judgment must be granted to the moving party." *Jermosen v. Coughlin*,

877 F. Supp. 864, 867 (S.D.N.Y. 1995) (internal quotation marks omitted)(citations omitted).

"Because it is not obvious to a layman that a motion for summary judgment supported by affidavits requires a response supported by similar affidavits in order to preserve factual disputes for trial," the Second Circuit has held that "[t]he failure of a district court to apprise pro se litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal." *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 34-35 (2d Cir. 1999) However, where the district court provides the *pro se* litigant with the requisite notice, the Second Circuit has held that the court's duty is discharged. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) This is not to say, however, that where a *pro se* litigant who has been given proper notice fails to respond to a summary judgment motion, the motion should be granted automatically; such a motion may properly be granted only if the facts as to which there is no genuine dispute "show that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c).)

Here, the Court explained to McAllister his duty to respond to Defendants' motions and the consequences of failing to respond at a telephone conference held with the Parties on December 8, 2014, in conversations[1] with McAllister on December 9, 2015, and January 22, 2015, and in a deadline extension Order dated January 9, 2015. (13-CV-5772, Doc. No. 37; 13-CV-6618, Doc. No. 39) The Court also gave McAllister two extensions to file a response. (13-CV-5772, Doc. Nos. 37, 40; 13-CV-6618, Doc. Nos. 39, 43) Lastly, Local 917 and Quick Park filed "Notices to Pro Litigant Who Opposes a Motion for Summary Judgment" explaining the

[1]McAllister called Chambers and expressed confusion and concern about Defendants' Summary Judgment Motions. He was told that Defendants had not filed "summaries" of the case, but rather, motions asking the Court to make a decision based on the undisputed facts in the case. McAllister was informed of the importance of filing a response to Defendants' motions and his right to present his version of the facts.

consequences of failing to respond in layman's terms with copies of the relevant Federal Rules of Civil Procedure. (13-CV-5772, Doc. No. 35; 13-CV-6618, Doc. No. 30) Thus, McAllister has received the requisite notice.

**3. Summary Judgment in Discrimination Cases**

In cases involving discrimination, summary judgment is a drastic provisional remedy that should only be granted with caution. *See Forsyth v. Fed'n Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005), abrogated on other grounds by *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir. 1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985). This is because in discrimination cases, evidence directly supporting a claim of intentional discrimination is rarely available. *Forsyth*, 409 F.3d at 569; *Gallo v. Prudential Residential Estate Serv. Ltd.,* 22 F.3d 1219, 1224 (2d Cir. 1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Desir v. City of New York,* 453 Fed. Appx. 30, 33 (2d Cir. 2011).

Nonetheless, summary judgment remains appropriate in some discrimination cases. *Forsyth*, 409 F.3d at 569 ("Yet, this drastic remedy may be proper in such a case where the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of "mere allegations or denials" of the facts asserted by the movant."); *see Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). The court's task at the summary judgment motion stage is carefully limited to discerning whether there are any genuine issues of material fact to be tried and not to decide the importance of such facts. *Gallo*,

22 F.3d at 1224.

**B. Disparate Treatment**

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Identical standards apply to employment discrimination claims brought under Title VII and NYHRL § 296 *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000)

Applying the three-part burden-shifting framework laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff may establish a claim of disparate treatment under Title VII either by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or by demonstrating that harassment on one or more of these bases amounted to a hostile work environment. *Dawson v. Bumble & Bumble Inc.*, 398 F.3d 211, 216 (2d Cir. 2005). Specifically, the plaintiff bears the burden of introducing admissible evidence that establishes that: 1) he is a member of a protected class; 2) he is competent to perform the job or is performing his duties satisfactorily; 3) he suffered an adverse employment decision or action; and 4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in a protected class. *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010).

> If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of

> discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

*Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005) (citing *Mario v. P & C Food Marke13-CV-5772, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002)) (internal quotation marks omitted).

The analysis is similar under the ADEA, except that a plaintiff bringing a disparate treatment claim pursuant to the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action and not just a contributing or motivating factor. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180. Age-discrimination claims under the ADEA and NYHRL are analyzed under the same standard. *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 n. 3 (2d Cir. 2007)

**1. McAllister's Discriminatory Termination Claims against Quick Park**

McAllister alleges in his Amended Complaint against Quick Park that he was terminated because of his race and age in violation of Title VII and NYHRL. (13-CV-6618, Doc. No. 5)

**a. On the Basis of Race**

Quick Park argues that the Court lacks jurisdiction to hear McAllister's racial discrimination claim against Quick Park because it was not alleged in the charge he filed with the EEOC. (13-CV-6618, Doc. No. 31, Ex. A (citing *Shah v. N.Y.S. Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir.1999).) McAllister's EEOC filing referred to the NYDHR Complaint for the alleged discrimination and that document solely referenced age discrimination, not racial

discrimination.

However, the Second Circuit recently held in *Fowlkes* that despite "passing descriptions" of the exhaustion requirement as "jurisdictional" in the court's jurisprudence, "when [the court's] decisions have turned on the question of whether proper administrative exhaustion of a Title VII claim is a jurisdictional prerequisite to bringing suit, we have consistently held that it is not." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385-86 (2d Cir. 2015). The court went on to "underscore that the failure of a Title VII plaintiff to exhaust administrative remedies raises no jurisdictional bar to the claim proceeding in federal court" and further explained that the mandatory but nonjurisdictional prerequisite to file a charge with the EEOC before bringing a Title VII claim may be subject to equitable defenses. *Id.*

It is not clear from the record whether an equitable principle may excuse McAllister's failure to exhaust before filing his federal Complaint, but, were the Court to assume he does have a viable defense, McAllister's claim would nonetheless fail on the merits.

McAllister has failed to establish that the adverse employment action he suffered - his termination - took place under circumstances giving rise to an inference of racial discrimination. Although McAllister alleges in his Amended Complaint against Quick Park that the employees who were not terminated and who took over the duties that used to fall to the porter position were mostly "Hispanic," the other porter who was fired along with McAllister, Oscar Guerrero, is also Latino. (13-CV-6618, Doc. No. 32 at 3.) Despite McAllister's allegations in the Amended Complaint that he later saw Guerrero working for Quick Park after he was terminated, McAllister testified in his deposition that he never saw Guerrero again after the day they were both terminated and that he did not know whether Guerrero ever worked for Quick Park again. (13-CV-6618, Doc. No. 31, Ex. O at TR36-37.) Lincoln Llopiz, Quick Park's Vice President of

Operations, provided an affidavit confirming that Guerrero was not rehired. (13-CV-6618, Doc. No. 32 at 3.) As further evidence that race was not a factor in McAllister's termination, Quick Park has provided personnel files showing that two of the employees McAllister identified as being "given" his job are black. (*Id.*, Ex. 3)

Assuming *arguendo* that McAllister did make out a prima facie case of discrimination, however, Quick Park provided a legitimate, non-discriminatory reason for terminating McAllister: Quick Park decided to eliminate the porter position and require the parking attendants to clean the garages when they were not parking cars in the interests of efficiency. (13-CV-6618, Doc. No. 32, at 2.) McAllister failed to provide any evidence that these reasons were pretext for racial discrimination.

McAllister stated in a letter to the Court dated January 28, 2015, that the garage he worked in was too large for a parking attendant to park cars and be a porter on their free time and that he knows the parking attendants are not doing porter duties as Quick Park says. (13-CV-6618, Doc. No. 38) He argued (presumably in response to Local 917's argument that McAllister was not retained as a parking attendant because he doesn't have a driver's license) that he "should have had the chance to apply and take a drivers test in order to keep the job." (*Id.*) He further stated that "jobs at least tell you a week or two before they fire you. I was told nothing. I went to work as I normally do, and I was told that I was no longer needed." (*Id.*)

McAllister alleged in a letter to the Court dated April 29, 2015, that he found out from the union steward at his local that the porter position became available again and that, despite Quick Park's prior representations, McAllister was not hired for the position. (Doc. No. 41) Quick Park denied these allegations in a letter dated May 14, 2015, and stated that the union steward never had such a conversation with McAllister. (Doc. No. 45)

Construing these factual disputes in McAllister's favor, McAllister still has not produced "evidence that reasonably supports a finding of prohibited discrimination" *Dawson,* 398 F.3d at 216-17. It may be true that Quick Park has unreasonable expectations as to what the parking attendants will have time to clean while on the job, but this alone does not suggest that Quick Park's explanation is a pretext for discrimination. *See Gale v. Napolitano*, No. 07-CV-5211 (DLI)(MDG), 2011 WL 809499, at *10 (E.D.N.Y. Mar. 2, 2011) ("With respect to pretext, the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason.")

The Court recognizes the hardship associated with suddenly losing a job and sees value in providing loyal employees more notice than a same-day termination. The Court also sees value in providing long-term employees with the opportunity to train and test for new positions in lieu of terminating them outright. However, these failures on Quick Park's part are not grounds for relief under Title VII or NYHRL. Without any evidence giving rise to an inference that McAllister's race was a motivating factor in his termination, McAllister's claims fail.

The Court grants Quick Park's motion for summary judgment on McAllister's Title VII and NYHRL racial discrimination claims.

**b. On the Basis of Age**

As Quick Park acknowledges in its brief, it is unclear if McAllister is asserting a claim of age discrimination because he did not "check" the ADEA as a grounds for suit on the first page of his Complaint, but provided age as a basis for Quick Park's alleged discrimination on page three. (13-CV-6618, Doc. No. 5) The letter attached to the Amended Complaint does not contain allegations concerning age discrimination. (*Id.*) Because McAllister is a *pro se* litigant, the Court

interprets his pleadings liberally and construes the Amended Complaint to a raise a claim of age discrimination under NYHRL.

McAllister has failed to establish that the adverse employment action he suffered - his termination - took place under circumstances giving rise to an inference of age discrimination. Although McAllister alleged in his NYDHR Complaint against Quick Park that the employees who were not terminated and who took over the duties that used to fall to the porter position were all younger than him, (13-CV-6618, Doc. No. 31, Ex. A), Quick Park has demonstrated with personnel files that these individuals are all older than McAllister: ages fifty-five, fifty-nine, and fifty-four. (13-CV-6618, Doc. No. 32, Ex.1) Furthermore, McAllister testified during his deposition that while he was working at Quick Park, no one ever said anything to him about his age. (13-CV-6618, Doc. No. 21, Ex. O at TR86.)

Because McAllister has not produced even "some evidence" that age was a motivating factor in the decision to terminate him, the Court need not determine whether or not Quick Park has demonstrated that it would have taken the action regardless of age. *Gross*, 557 U.S. at 180. In any case, the Court notes that Quick Park provided a legitimate, non-discriminatory reason for terminating McAllister: Quick Park decided to eliminate the porter position and require the parking attendants to clean the garages when they were not parking cars. (13-CV-6618, Doc. No. 32, at 2.) The Court grants Quick Park's motion for summary judgment on McAllister's NYHRL age-discrimination claim.

**C. Failure to Promote**

Although McAllister brings a "failure to promote" claim against Local 917, his pleadings and deposition testimony indicate that he does not allege that the union had the authority to promote him to a higher position and failed to do so because of racial animus, but rather, that

Local 917 failed to help him get his Porter position back when Quick Park laid him off. (13-CV-5772, Doc. No. 5 (In the "facts" section of the Amended Complaint: "[*illegible*] to find work when the job had lay [sic] me off"); Doc. No. 1 (In the "facts" section of the original Complaint: "Promise to find me work, when the job had lay [sic] me off."); Doc. No. 31, Ex. 3 at 25-27. ("Q: So you don't mean when you say failure to promote you don't mean you would be promoted to a higher job title; right? A: I didn't mean that . . . Q: So you believe you weren't represented by the union? A: Correct")) In order to establish a Title VII or ADEA claim concerning union representation, the plaintiff must show "at a minimum, that the union breached its duty of fair representation and that its actions were motivated by discriminatory animus." *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010)

**1. McAllister's Breach of Fair Representation Claims Against Local 917**

McAllister alleges in his Amended Complaint (TS) that Local 917 breached its duty of fair representation in violation of Title VII and the ADEA. (13-CV-5772, Doc. No. 5)

**a. On the Basis of Race**

Local 917 argues that McAllister has failed to establish that Local 917 breached its duty of fair representation. (13-CV-5772, Doc. No. 34 at 8.) The duty of fair representation does not require labor unions to do precisely what union members would like when processing a grievance. *See Barr v. United Parcel Servs., Inc.*, 868 F.2d 36, 44 (2d Cir. 1989) ("A union's good faith, non-arbitrary failure to take an action that is unlikely to be advantageous does not subject it to liability for breach of its duty of fair representation") "To establish a breach of duty of fair representation the union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermined the arbitral process. Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's

part does not give rise to a breach." *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 42 (2d Cir. 2006)

Citing *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 284 (1972), Local 917 argues that because Quick Park was not obligated by the substantive provisions of the collective-bargaining contract negotiated by its predecessor, Imperial, (specifically, Imperial's practice of employing porters) Local 917 did not breach its duty of fair representation in failing to help him get rehired as a porter or a parking attendant. (13-CV-5772, Doc. No. 34 at 9.)

It is not settled law that Quick Park was free to depart from the substantive provisions of the collective bargaining agreement between Local 917 and Imperial. As discussed at length by the Second Circuit in *Local 348-S, UFCW, AFL-CIO v. Meridian Mgmt. Corp.*, 583 F.3d 65, 74 (2d Cir. 2009), the Supreme Court's jurisprudence on this topic in *Burns*, *Wiley*, and *Fall River*, although at points conflicting, points to common principles. *See Burns*, 406 U.S. 272; *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27 (1987); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964).

Based upon a review of these decisions, the court in *Local 348-S* determined that "where there are sufficient indicia of substantial continuity of identity of the workforce, it is possible that a successor employer will be bound at least by some of the substantive terms of a pre-existing CBA." 583 F.3d at 76. "[T]he existence or non-existence of substantial continuity in the context of assessing the duty to bargain is determined by looking at: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; whether the new entity has the same production process, produces the same produc13-CV-5772, and basically has the same body of customers." Although the court in *Local 348-S*, 583 F.3d at 66, concluded that

these questions should ultimately be resolved in arbitration, the Court notes that there appears to be substantial continuity in the present case: All of the parking garage employees were hired by Quick Park when it took over from Imperial and they were doing the same jobs in the same conditions for the same customers as they had under Imperial. Moreover, union members have an "established right . . . to rely on the protections negotiated for them by their union, at least until that union negotiates a new agreement with their new employer. *Local 348-S*, 583 F.3d 65, 76.

Because Local 917's obligations under the collective bargaining agreement are unclear from the record, the court cannot determine whether it breached its duty of fair representation in failing to aid McAllister keep his employment with Quick Park.

Assuming *arguendo* that Local 917 did breach its duty, however, McAllister has failed to establish that the adverse employment action he suffered - not being promoted to the position of parking attendant - took place under circumstances giving rise to an inference of race or age discrimination. McAllister stated in his deposition that he "didn't know" if anyone at Local 917 ever said anything to him about his race or age. (13-CV-5772, Doc. No. 30, Ex. 3) He has provided neither direct or circumstantial evidence of animus and only alleges in his Amended Complaint that another individual, Oscar Oqueneo, was offered his job back under a different title. (13-CV-5772, Doc. No. 5) Although McAllister does not specify what he believes the union should have done when he was terminated, to the extent that he wanted Local 917 to secure him a position as a parking attendant, Local 917 alleges that McAllister does not have a driver's license and was thus not qualified to be a parking attendant. (13-CV-5772, Doc. No. 34 at 9.) David Perez, secretary-treasurer for Local 917, also states that the union does not maintain a hiring hall for its members. (13-CV-5772, Doc. No. 30, Ex. 1) Lastly, McAllister testified during

his deposition that Perez did not promise him that he would help him find a position and that he did not know of Perez helping anyone else find a position. (13-CV-5772, Doc. No. 30, Ex. 3 at 29-30.)

Assuming that McAllister has made out a prima facie case of race or age discrimination, Local 917 provided legitimate, non-discriminatory reasons for failing to represent McAllister: the union believed Quick Park was not bound by the collective bargaining agreement to continue employing porters and, to the extent that McAllister was interested in working as a parking attendant, he did not have a driver's license and was thus not qualified for the position. (Doc. No. 32 at 9-10.) McAllister failed to provide any evidence that these reasons were pretext for racial or age discrimination. Under the ADEA's stricter "but-for" standard, McAllister's claim is even more tenuous.

The Court grants Local 917's motion for summary judgment on McAllister's race and age Title VII and ADEA failure to promote claims.

**D. Retaliation**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any ... employee [ ] ... because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). The ADEA sets forth similar prohibitions with respect to discrimination on the basis of age. *See* 29 U.S.C. §§ 623(a)(1) and (2). To prevail on a retaliation claim under Title VII or the ADEA, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, No. 14-1395-CV, 2015 WL 4604250, at *11 (2d Cir. Aug. 3, 2015); *see Kessler v.*

*Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006). A "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law. The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including complaints to management. *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010).

**1. McAllister's Retaliation Claims Against Local 917**

McAllister has presented no evidence that he was engaged in protected activities known to Local 917 for which he suffered retaliation. As the NYDHR investigator noted in the dismissal of McAllister's Complaint against Local 917, McAllister "did not oppose discrimination; he opposed the fact that less senior union members were retained over him. Therefore, [McAllister] did not engage in protected activity prior to his separation from [Quick Park]." (13-CV-6618, Doc. No. 31, Ex. 4) McAllister did not contact Local 917 until after the adverse employment action - his termination - occurred. During his deposition, McAllister testified that he did not say to anyone that he thought he was being discriminated against because of his age or his race. (Doc. No. 30, Ex. 3 at 22-23.) Even assuming that McAllister was engaged in protected activities known to Defendan13-CV-5772, there is no evidence - either direct or circumstantial - to support a causal connection between these activities and any of the adverse employment actions McAllister suffered.

The Court grants Local 917's motion for summary judgment on McAllister's Title VII and ADEA retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED**. (13-CV-5772, Doc. No. 30; 13-CV-6618, Doc. No. 30) The Clerk of the Court is directed to close these cases on the docket.

**SO ORDERED this 2nd day of September 2015**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**